OPINION OF THE COURT
Walter B. Tolub, J.
Plaintiffs, New Amber Auto Service, Inc. (New Amber) and Spin Holdings, Inc., doing business as Jack’s Place (Spin Holdings), move for a judgment (1) declaring section 24-141 of the Administrative Code of the City of New York unconstitutional; (2) declaring section 3.3 (a) of the New York City Environmental Control Board’s Rules and Regulations (15 RCNY 31-53 [a]) unconstitutional; and (3) awarding each plaintiff remission of its fine and counsel fees.
In the alternative, plaintiff New Amber seeks a judgment pursuant to CPLR article 78 on the ground that the final determination of the defendant New York City Environmental Control Board (ECB) against it was arbitrary and capricious.
Defendants ECB and the City of New York cross-move to dismiss the claims of plaintiff New Amber pursuant to CPLR 3211 (a) (7) and to deny plaintiff’s motion for a declaratory judgment.
Defendants’ cross motion which seeks an order dismissing the claims of Spin Holdings, or in the alternative, pursuant to CPLR 1003, dropping Spin Holdings from this action on the ground that it is a misjoined party, was held in abeyance by this court during argument on the motion and cross motion pending the resolution of the constitutional claims asserted by New Amber.
Plaintiff New Amber is an auto body shop located in Queens, New York. On September 1, 1993, an inspector from the New York City Department of Environmental Protection (DEP) was passing the auto body shop when he noticed one of New Amber’s workmen spray painting a car which was emitting paint fumes, an "odorous air contaminant”, into the open *115 air. The inspector issued a notice of violation and hearing to New Amber for violation of section 24-141 of the Administrative Code. Thereafter, an administrative hearing was held at the ECB with regard to the violation issued and a decision was rendered by the Administrative Law Judge (ALJ) against plaintiff. New Amber’s appeal of the decision was denied on March 16, 1994.
Plaintiff Spin Holdings owns and operates a cafe in Battery Park City, New York. On January 28, 1994, Spin Holdings was issued a notice of violation and hearing by a DEP inspector for violation of section 24-141 of the Administrative Code based upon said plaintiff’s emission of noxious cooking odors and fumes into the air. A hearing was held at the ECB with regard to this violation and a decision was rendered by the ALJ against Spin Holdings. Thereafter, Spin Holdings appealed the decision and the appeal is currently pending. Both plaintiffs paid their fines of $220 each.
The case at bar involves New York City’s Air Pollution Control Code which has as its stated purpose "to preserve, protect and improve the air resources of the city so as to promote health, safety and welfare, prevent injury to human, plant and animal life and property, [and] foster the comfort and convenience of its inhabitants” (Administrative Code § 24-102). In order to control and reduce air pollution, section 24-102 declares it "to be the policy of the city to actively regulate and eliminate [harmful or objectionable] emissions” and, provides that the Code "be liberally construed so as to effectuate the purposes described in this section”.
Section 24-141 of the Administrative Code provides in relevant part:
"§ 24-141 Emission of air contaminant (including odorous air contaminant) or water vapor; detriment to person, property or plant and animal life. No person shall cause or permit the emission of air contaminant * * * or water vapor if the air contaminant or water vapor causes or may cause detriment to the health, safety, welfare or comfort of any person, or injury to plant and animal life, or causes or may cause damage to property or business * * *
"(b) The prohibition of this section includes, but is not limited to, emissions of odorous air contaminant from the following sources: * * *
"(20) Paint, oil, shellac, turpentine or varnish manufacture” (emphasis added).
*116 Section 24-104 of the Administrative Code defines "air contaminant” as "any particulate matter of any gas or any combination thereof in the open air, other than uncombined water or air” (subd [1]); "odorous air contaminant” as "any air contaminant which is released in sufficient concentrations to be detected by the human olfactory sense” (subd [34]); and, "emission” as "dispersion of an air contaminant into the open air of the city” (subd [21]).
15 RCNY 31-53 provides in relevant part: "§ 31-53 Evidence, (a) Burden of proof The complainant shall have the burden of proof in establishing that the respondent has committed or caused the violation charged in the notice of violation, but the proponent of any factual proposition shall be required to sustain the burden of proof with respect thereto. The notice of violation shall constitute prima facie evidence of the facts stated therein.”
UNCONSTITUTIONAL VAGUENESS
New Amber challenges the constitutionality of Administrative Code § 24-141 both on its face and as applied. It argues that it is vague on its face since "[t]here is no definition of what constitutes a 'detriment to the health, safety, welfare, or comfort of any person.’ ” It further argues that the statute has no objective standard which determines compliance with, or violation of, the law. For example, plaintiff posits that a reasonable person may not be bothered by the spray painting, where a sensitive person might. It is argued that this leads to arbitrary and discriminatory application. New Amber also challenges section 3.3 (a) of the ECB Rules and Regulations on the basis that it is unconstitutionally vague and violative of due process because it fails to specify what the burden of proof is at an ECB hearing.
At the onset we observe that a legislative enactment is presumed to be valid and the party seeking to invalidate the provision has the heavy burden of demonstrating that the statute is unconstitutional. (People v Bright, 71 NY2d 376, 382.) It is the obligation of the court to construe the statute, if possible, to preserve its constitutionality. (People v Epton, 19 NY2d 496, 505, cert denied 390 US 29.)
We also note that of necessity, statutes must speak in general terms and leave room for the flexible and reasonable application of executives, administrators, and judicial officers. "[I]t is not necessary that the Legislature supply administra *117 tive officials with rigid formulas in fields where flexibility in the adaptation of the legislative policy to infinitely variable conditions constitute the very essence of the programs. Rather, the standards prescribed by the Legislature are to be read in light of the conditions in which they are to be applied.” (Matter of Nicholas v Kahn, 47 NY2d 24, 31.)
Courts have considered the legislative intent in enacting similar statutes to the one at issue herein, i.e., to prohibit or control air contamination in the interest of health, safety and enjoyment of life or property, and have concluded that it would be impracticable to precisely define in advance what may constitute an impermissible emission. (See, e.g., Matter of Liberty Lines Express v New York City Envtl. Control Bd., 160 AD2d 295, 296; West Bronx Auto Paint Shop, 33 Misc 2d 29, affd 17 AD2d 772, mod 13 NY2d 730; Delford Indus. v New York State Dept. of Envtl. Conservation, 126 Misc 2d 355; see also, People v Olsonite Corp., 80 Mich App 763, 265 NW2d 176.)
A statute is unconstitutionally vague on its face if it specifies no comprehensible standard or guide capable of interpretation (Coates v City of Cincinnati, 402 US 611, 614) or "when it cannot validly be applied to any conduct” (Brache v County of Westchester, 658 F2d 47, 50 [2d Cir 1981], cert denied 455 US 1005; see also, Tennessee v Garner, 471 US 1, 11-12).
The following two-part test has been used by the United States Supreme Court to determine whether a statute is unconstitutionally vague as applied: "whether the statute 'give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited’ and * * * whether the law 'provide[s] explicit standards for those who apply [it].’ ” (United States v Schneiderman, 968 F2d 1564, 1568 [2d Cir 1992], cert denied — US —, 113 S Ct 1283 [1993], quoting Grayned v City of Rockford, 408 US 104, 108; see also, Quintard Assocs. v New York State Liq. Auth., 57 AD2d 462, appeal dismissed 42 NY2d 973.)
The New York Court of Appeals has noted that " '[d]ue process requires only a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of the statutory terms’ ” (41 Kew Gardens Rd. Assocs. v Tyburski, 70 NY2d 325, 336, quoting Foss v City of Rochester, 65 NY2d 247, 253; City of New York v Castro, 160 AD2d 651, 652; see also, Connally v General Constr. Co., 269 US 385, 391).
*118 In addition to providing a person of ordinary intelligence with a reasonable opportunity to know what is prohibited, a statute should seek to prevent "arbitrary and discriminatory enforcement” (Grayned v City of Rockford, 408 US 104, 108, supra). However, "the fact that different minds may reach different results when seeking to determine whether a given [situation] falls within the statutory definition * * * does not render the statute void for vagueness” (Hejira Corp. v MacFarlane, 660 F2d 1356, 1367 [10th Cir 1981]).
Insofar as the above relate to the facts of this case, we conclude that on its face and as applied, section 24-141 provides sufficient notice to pass constitutional muster. As previously noted, plaintiff argues that "detriment to the health, safety, welfare, or comfort of any person” is vague since it is not defined. However, as the Second Circuit Court of Appeals observed, "if a statute has a core meaning that can reasonably be understood, then it may validly be applied to conduct within the core meaning, and the possibility of such a valid application necessarily means that the statute is not vague on its face” (Brache v County of Westchester, supra, at 51).
All parties agree that the regulatory provisions must be read as a whole. When read as a whole, section 24-141 together with the other applicable provisions of the Administrative Code sufficiently inform the public of the particular act or action proscribed. Although, the words "cause or may cause” might be troubling as imprecise, here, the statute has a "core meaning that can reasonably be understood” and validly applied. The terms "air contaminant” and "odorous air contaminant”, the emission of which causes, or may cause, detriment to the health, safety, welfare or comfort of any person are defined in section 24-104. The word "detriment” is defined in the dictionary as "something that causes damage, harm or loss”. (American Heritage Dictionary [2d college ed].) Its plain meaning when used in the subject statute is that the emission of certain strong odors and visible dust have harmful effects on, inter alla, human health. The person of ordinary intelligence is not left to make arbitrary guesses as to the meaning of the commonly understood and well-defined terms here presented. We further find that the subject provision is rationally related to the legislative objective which is to protect the health, safety, welfare and comfort of human, plant and animal life.
Moreover, the Legislature set forth a list of examples of odorous air contaminants in section 24-141 (b) which specifi *119 cally include paint, the emission of which is proscribed. The emission of paint is not the only air contaminant singled out; the subject section also lists, among other things, aircraft engines, compost heaps, diesel engines and fish processing. Although the subject section does require the exercise of some degree of administrative judgment, it does not have the broad power to punish all emissions. The statute gives "fair notice to those to whom [it] is directed.” (Communications Assn, v Douds, 339 US 382, 412.) We conclude that New Amber has failed to meet its heavy burden of demonstrating that Administrative Code § 24-141 is unconstitutional.
Likewise, we find that section 3.3 (a) of the Environmental Control Board Rules and Regulations (15 RCNY 31-53 [a]) is not unconstitutionally vague and is not violative of due process. The Due Process Clause of the Fourteenth Amendment of the United States Constitution affords one who is a party in an administrative hearing the opportunity to be heard with timely and adequate notice advising as to the reasons for the hearing, the opportunity to cross-examine witnesses and to call witnesses on its behalf, and the opportunity to present arguments and evidence. (See, Goldberg v Kelly, 397 US 254, 267.)
In the case at bar New Amber does not dispute that it received timely and adequate notice of the hearing nor that it had an opportunity to present evidence and to cross-examine DEP witnesses. Moreover, New Amber was afforded the right to appeal the adverse decision of the ALJ, which appeal was denied. Accordingly, we find no violation of New Amber’s due process rights in the ECB procedure.
New Amber argues that although section 3.3 of the ECB Rules and Regulations states that the complainant has the burden of proof, it fails to state what the standard of proof is, i.e., whether the complainant must prove its case by a preponderance of the evidence, by clear and convincing evidence, beyond a reasonable doubt, or some other standard. Thus, it is argued that the individual Judge can arbitrarily apply any standard, or no standard, as he or she sees fit.
Defendants state that it is a general principle of administrative law that the standard of proof in administrative hearings is a preponderance of the evidence and that the ECB follows this standard. They further note that New Amber would have been advised of this standard at the hearing had it asked.
Defendants are correct in that because this is a civil pro *120 ceeding, the standard of proof is preponderance of the evidence. (See, e.g., Matter of Property Clerk of N. Y. City Police Dept. v Ferris, 77 NY2d 428; Property Clerk of N. Y. City Police Dept. v McDermott, 185 AD2d 134; Matter of Silverstein v Appeals Bd., 100 AD2d 778, Iv denied 62 NY2d 606; see also, Boise Cascade Corp. v Secretary of Labor & Occupational Safety & Health Review Commn., 694 F2d 584 [9th Cir 1982].)
There is a limited number of civil cases where a fair preponderance of the credible evidence is not sufficient to meet the burden of proof. In those cases, a party must establish his or her case by "clear and convincing evidence”. Among the cases where clear and convincing evidence is required are cases involving fraud (Margrander v Fox, 272 App Div 788, rearg denied 272 App Div 866); mental capacity and undue influence (Matter of Widmayer, 74 App Div 336); the Food Stamp Program (Matter of Williams v Perales, 156 AD2d 697); the Mental Hygiene Law (Savastano v Nurnberg, 152 AD2d 290, affd 77 NY2d 300); the Tax Law (Matter of Flanagan v New York State Tax Commn., 154 AD2d 758); and the Department of Motor Vehicles (Matter of Ortenberg v Commissioner of Motor Vehicles, 191 AD2d 898). Finally, it is well established that the rule requiring proof beyond a reasonable doubt is strictly limited in its application to purely criminal trials. (See, Kurz v Doerr, 180 NY 88.)
We conclude that New Amber was afforded its due process rights during the hearing, and that 15 RCNY 31-53 (a) is not unconstitutionally vague because it fails to set out in writing, complainant’s standard of proof at the hearing.
Accordingly, that branch of New Amber’s motion which seeks to render Administrative Code § 24-141, and 15 RCNY 31-53 (a) unconstitutional, is denied. The court declares said statutes constitutional.